**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JACK LEE BONNER,      :

   Plaintiff,      :

vs.           :   CA 12-0603-C

CAROLYN W. COLVIN,    :
Acting Commissioner of Social Security,
            :
   Defendant.

## MEMORANDUM OPINION AND ORDER

  Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 & 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the August 21, 2013 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]   Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 19 & 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

Plaintiff alleges disability due to degenerative disc disease of the lumbar spine and cervical spine with radiculopathy, arthritis in both knees, status-post arthroscopic surgery of the left knee, arthritis of the ankles, and a history of depression. The Administrative Law Judge (AL ) made the following relevant findings:

> **1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.**
>
> **2.    The claimant has not engaged in substantial gainful activity since December 14, 2002, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> .    .    .
>
> **3.    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and cervical spine with radiculopathy; arthritis in both knees; status post arthroscopic surgery to the left knee; a history of depression; a history of inhalant abuse; arthritis in the ankles associated with residuals from an injury in 1994 (20 CFR 404.1520(c) and 416.920(c)).**
>
> .    .    .
>
> **4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> .    .    .
>
> **5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). In function-by-function terms, the claimant can lift/carry 10 pounds frequently and 20 pounds occasionally; sit for a total of 6 hours during an 8-hour workday; and stand/walk for a total of 4 hours each during an 8-hour workday. He can frequently use his upper and lower extremities for pushing and pulling of controls; and can occasionally bend, stoop, kneel, crouch and crawl. He can frequently climb ramps and stairs; but**

_____

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.'))

**is precluded from climbing ladders, ropes and scaffolds. He can frequently reach overhead in all directions. He has no limitation on handling, fingering, and feeling. He is precluded from exposure to extreme heat, cold, humidity, wetness, and pulmonary irritants. He cannot work around unprotected heights and dangerous machinery. He is able to perform simple routine tasks involving no more than simple, short instructions and simple work related decisions with few work place changes; and can do no work that requires reading instructions or writing reports.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing held on August 11, 2010, testimony revealed the claimant is working one to two days a week as a farm hand/laborer, washing out tractors and trailers.[2] The claimant alleges he is unable to work due to back pain and problems with both knees. He receives medical attention through a local clinic, and goes whenever he has money for treatment. He

---

[2]    Plaintiff never testified that he works one to two days a week as a farm hand/laborer washing out tractors and trailers; instead, his clear testimony was that he "work[s] one day *sometime* out of the ***month, sometime*** I work ***two days***." (Tr. 40; *compare id. with* Tr. 24.) Indeed, the ALJ made a point of confirming that plaintiff's testimony was that he worked one or two days out of each month. (*Id.* at 40 ("Q And that's one to two days a month[?] A Yes, ma'am.").)

takes pain medications daily that make him sleepy. He rates his pain at about 6 and sometimes 7, on a scale of 0-10, with 10 being the most intense. He has problems sleeping at night, and basically sleeps during the day. He receives treatment for depression through Mobile Mental Health and AltaPointe. He drinks a couple of beers a week, but does not feel he has any problems with alcohol. He denies problems with inhalant abuse. He feels bad all the time, and is weak and sluggish. He does not drive, because driving makes his pain worse.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged musculoskeletal impairments, the evidentiary record indicates that the claimant is still working, albeit not at substantial gainful activity levels. The claimant indicated he experienced side effects from pain medications but was unclear whether he had reported such to his treating physicians. He has a driver's license although he claimed he had not driven in 6 months. The claimant lives by himself and performs all chores.[3] It is noted that the claimant alleges he has no water or electricity. He walks to a local store to obtain groceries. He estimated he was able to lift and carry 16 pounds.[4]

The medical evidence of record documents an examination on January 17, 2007 at Grove Hill Health Care that addressed the claimant's back, neck and bilateral arm pain. X-rays revealed degenerative changes [to] C4-C6 with moderate severity and mild degenerative changes in the lower back.[5] The claimant indicated he was anxious to get back to work, and felt he could make a good living. Lumbar spine x-rays on September 29, 2008 from Jackson Medical Center showed mild spondylosis. Cervical spine x-rays showed degenerative disc disease at C4-C5. On October 6, 2008, the claimant presented with complaints of right ankle pain. X-rays showed comminuted fracture of the medial malleolus with minimal bone

---

[3]    The ALJ fails to mention Bonner's qualifications to this very general statement—a statement answered by the claimant based upon the ALJ's leading question—including that he does no yard work and that his cooking consists of obtaining Hotpockets from a store fifty yards from his house. (Tr. 48-49.)

[4]    Again, this is not a true reflection of plaintiff's testimony inasmuch as Bonner testified that he felt like he could "pick up about two gallons [of milk]" or up to "16 pounds"; he never testified that he can carry 16 pounds. (Tr. 49; *compare id. with* Tr. 24.)

[5]    The ALJ neglected to mention the Toradol and Depo Medrol injections plaintiff received less than a month earlier from Dr. Charles Buckmaster. (*Compare* Tr. 280 *with* Tr. 281.)

displacement, however joint space was well maintained. A follow-up examination was recommended, if symptoms persisted.

On May 22, 2009, the claimant underwent a consultative evaluation by Huey Kidd, D.O., at the request of the Social Security Administration. The claimant reported severe pain on a daily basis and swelling of the lower extremities. He reported difficulty sleeping and with walking, and described occasional giving way of his right leg. The claimant reportedly had undergone multiple epidurals in the past. He also reported a history of arthroscopic left knee surgery. The claimant stated that he worked on occasion as a farm helper 4 or 5 days a month. He reportedly drank 2 to 3 beers a day on the weekend. He also reportedly was taking medication, but did not bring any medicine with him to the exam, and could not recall the names of the medicines. On physical examination, he had full range of motion and 5/5 strength in the upper extremity and had full range of motion and 5/5 strength in the lower extremity bilaterally. He had some scarring over the left knee from arthroscopic surgery. He was unable to heel walk or toe walk, could not bend and touch his toes and could not squat and stand. He was, however[,] able to get in and out of a chair without much difficulty although he used his arms to help himself stand. He brought a cane with him, but did not require it to walk. He limped, particularly with the right leg in an antalgic manner. Deep tendon reflexes were 2/4 at the patella and the Achilles.

On May 28, 2009, a State Agency Medical Consultant[] completed a Physical Residual Functional Capacity Assessment[] and found that the claimant was capable of the following in an 8-hour workday: lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for about 6 hours per day; sitting for about 6 hours per day; and unlimited pushing and/or pulling. The claimant was found to have the following postural limitations: stooping, kneeling, crouching, and crawling occasionally; and climbing ramp/stairs and balancing frequently. There were no manipulative, visual, or communicative limitations. The only environmental limitation was for avoidance of unprotected heights.

More recent records from Grove Hill Health Care show[] where the claimant presented on May 5, 2010, for complaints of a cracked disc in his back, in addition to pain in his back, neck and left arm. He returned on May 27, 2010, with multiple complaints of intermittent tingling in his hands, some weakness, and headache. A physical examination was essentially unremarkable, with normal blood pressure, as were all other vital signs.[6] It was recommended that the claimant undergo a colonoscopy

---

[6]     On May 27, 2010, plaintiff's back, neck and extremities were not examined (*see* Tr. 296), as they were on May 5, 2010 (Tr. 297), and while the ALJ records plaintiff's "vital signs" on May 27, 2010 (*compare* Tr. 25 *with* Tr. 296), she makes no mention of the numerous "positive" signs noted on the physical examination conducted on May 5, 2010, including decreased range
(Continued)

secondary to complaints of rectal bleeding, however[,] he refused the procedure.

While it is credible that the claimant has symptoms related to musculoskeletal impairments, his allegations of neck pain, back pain, left arm numbness that prevents him from being able to work are not fully credible. While the claimant does have medically determinable impairments supported by the medical evidence of record in the file, these impairments could reasonably be expected to produce some of the above stated symptoms, however, the claimant's statements are considered to be partially credible as the severity alleged is not totally consistent with more current objective findings.

.        .        .

As for the opinion evidence, significant weight is assigned to the findings and opinions offered by the treating and examining medical experts of record as outlined within the context of this decision, with the exception of Dr. Kidd's at Exhibit B11-F, to which no weight is assigned. The Administrative Law Judge finds the opinion offered by Dr. Kidd is not supported by the other medical evidence appearing in the record and is inconsistent with the objective examination findings. For example, Dr. Kidd reported that the claimant had a full range of motion in his extremities with a 5/5 grip strength. It was noted that the claimant had a cane but did not need it for ambulation. Consequently, these findings are inconsistent with his opinion that the claimant is unable to work.

Additionally, while no controlling weight is assigned to the State Agency Medical Consultant at Exhibit B11-E, the undersigned notes that the residual functional capacity [assessment] is consistent with other evidence in the record.

After carefully considering the entire record in this matter, including the claimant's testimony, the undersigned concludes that the claimant retains the residual capacity to perform a reduced range of light work as set forth above, and has not been disabled for any 12-month period since the alleged onset date.

**6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

---

of motion and muscle spasm in the neck, tenderness of the back with pain radiation into the left leg, an increase in pain and positive straight leg raise on the left at 30 degrees and positive straight leg raise on the right at 45 degrees, and a decrease in reflexes and leg strength (*compare* Tr. 297 *with* Tr. 25 (no mention of May 5, 2010 examination findings)).

.    .    .

**7.      The claimant was born on June 14, 1961 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).**

.    .    .

The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include: Bench Assembler (DOT 706.684-022), with 5,200 positions available in the state of Alabama, and 850,000 positions available nationally; Light Packing Worker (DOT 920.686-038), with 1,200 positions available in the state of Alabama, and 225,000 positions available nationally; and Cafeteria Attendant (DOT 311.677-010), with 1,200 positions available in the state of Alabama, and 300,000 positions available nationally.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Accordingly, although the claimant's additional limitations do not allow the performance of the full range of light work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 202.19.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 14, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 21, 21-22, 22, 23-25, 26 & 27 (internal citations omitted; emphasis in original; footnotes added).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert, is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "In determining whether substantial evidence exists, we must view the record as a whole, taking into account

evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[7]

In this case, the plaintiff contends that the following errors were committed in this case: (1) the ALJ failed to assign weight to the opinion of examining physician Dr. Huey Kidd; (2) the ALJ's finding that he is capable of performing a limited range of light work is not supported by substantial evidence; and (3) the ALJ failed to properly apply the pain standard.

These arguments require the application of the proper analysis for consideration of RFC "issues" raised in cases like the instant one. The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'" *Hanna v. Astrue,* 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1) (2011) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

---

[7] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level under § 404.929 or at the Appeals Council review level under § 404.967, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); *see also* 20 C.F.R. § 416.946(c) (same), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from his own medical sources. 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from his impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id*.

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. §§ 404.1545(a)(4) & 416.945(a)(4).

> (b) *Physical abilities*. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting,

10

carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

(c) *Mental abilities.* When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

(d) *Other abilities affected by impairment(s).* Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary

evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's rejection of such opinion,[8] 223 Fed.Appx. at 923-924; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts— including this one—that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[9] *Compare, e.g.,*

---

[8]     An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.*, 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

[9]     In *Green, supra*, such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id.* at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The (Continued)

*Saunders v. Astrue,* 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the

ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds

occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six

hours in an eight hour workday, [] when the record does not include an evaluation of

Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting,

bending, or carrying.") *with* 20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d);

*see also Packer v. Astrue,* 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must

link the RFC assessment to specific evidence in the record bearing upon the claimant's

ability to perform the physical, mental, sensory, and other requirements of work.").

---

Eleventh Circuit's analysis in *Green,* while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

    Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence. [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.
>
> **The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the

Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that

the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

In this case, the Court finds that the ALJ did not completely link her RFC assessment—that is, a limited range of unskilled light work—to specific evidence in the record bearing upon Bonner's ability to perform the physical, mental, sensory and other requirements of work because she failed to set forth her reasons for finding that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[]" (Tr. 24; *compare id. with* Tr. 25), as more precisely set out hereinafter.

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g.*, *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.[10] If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* at 1225 (internal citations omitted; footnote added).

---

[10]     "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw a reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

"20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms *must* be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied). In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors / evidence set forth in 20 C.F.R. § 404.1529(c). More specifically, "[w]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. §§ 404.1529(c)(3); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

In this case, the ALJ clearly recognized that plaintiff's impairments meet the pain standard (*see* Tr. 24 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]")) yet found that his subjective pain (and, presumably, his medication side effects) complaints were not entirely credible (*id.* ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."); *see also id.* at 25 ("While it is credible that the claimant has symptoms related to musculoskeletal impairments, his allegations of neck pain, back pain, left arm numbness that prevents him from being able to work are not fully credible. While the claimant does have medically determinable impairments supported by the medical evidence of record in the file, these impairments could reasonably be expected to produce some of the above stated symptoms, however, the claimant's statements are considered to be partially credible as the severity alleged is not totally consistent with more current objective findings[11].")).[12] However, the ALJ, in making her credibility finding, *see Foote, supra,* at 1561, considered only the objective medical evidence of record but did not consider the other factors/evidence set forth in 20 C.F.R.

---

[11]     Although this is circular analysis, as set forth *infra,* the Court would also note that this statement by the ALJ ignores several "current" objective findings which are, arguably, indicators of the intensity and persistence of plaintiff's pain, such as muscle spasms and limited range of motion (*see* Tr. 297 (muscles spasms noted as well as positive straight leg raising on both sides)). *See* SSR 88-13 (noting that reduced joint motion and muscle spasms are reliable indicators from which to draw a reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity).

[12]     This type of circular and conclusory analysis is simply not useful in a pain case. In other words, if district courts allow such analysis to suffice, there would be no reason for ALJs to account for the "other factors" set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). Indeed, sanctioning such approach would effectively allow ALJs to reject a claimant's testimony of pain (and other symptoms) without articulating "*explicit* and *adequate* reasons for doing so." *See Wilson, supra,* 284 F.3d at 1225 (emphasis supplied).

§ 404.1529(c) (*see* Tr. 24-25). This was error. In other words, in this decidedly "pain" case,[13] *Foote, supra,* at 1562 ("'[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the [Commissioner]'s decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"), the ALJ's adverse credibility determination is not supported by substantial evidence because she failed to utilize any of the many reasons at her disposal for finding Bonner's testimony not fully credible, including daily activities, *see Wheeler v.* Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (noting activities such as caring for personal needs, visiting a sick aunt, helping his spouse around the house, and carrying out the garbage supported the ALJ's finding that the claimant did not suffer disabling pain),[14] sporadic use of narcotic pain medication, *see Davis v.* Astrue, 2011 WL 3875620, *8 (M.D. Ala. Aug. 31, 2011) ("The court finds the ALJ's decision to discount plaintiff's testimony to be minimally adequate. He stated at least one specific reason—*i.e.,* that plaintiff's 'use of medication does not suggest the presence of any impairment(s) which is more limiting than found in this decision.' The ALJ's failure to cite the evidence in support of this stated reason within his credibility analysis is not the best practice, and it needlessly complicates review. However, it is apparent from the decision as a whole that the ALJ

---

[13]　(*Compare, e.g.,* Tr. 297 ("B[ac]k pain [with] sciatica[.]" *with* Tr. 292 ("Low back pain with radicular symptoms, . . . epidurals by history, continued pain.") and Tr. 286 ("Neck Pain.").)

[14]　Although the ALJ mentioned Bonner's daily activities (*see* Tr. 24), she simply nowhere indicated that such activities were indicative of the fact that plaintiff does not suffer from disabling pain (*see id.* at 24 & 25). And even though the ALJ mentioned such daily activities, she incorrectly recalled the claimant's testimony regarding such daily activities (*compare id.* at 24 *with id.* at Tr. 48-49), as well as the frequency at which Bonner performs work activity (*compare* Tr. 24 *with* Tr. 40).

here refers to plaintiff's sporadic use of narcotic pain medication, described fully within the ALJ's summary of the evidence and supported by evidence of record. Accordingly, the court finds without merit plaintiff's contention that the ALJ's credibility determination is flawed as to his testimony of disabling pain." (internal citations and footnote omitted)),[15] and the like.[16]

Because the ALJ's credibility determination is flawed, this Court is unable to find that the ALJ provided the linkage necessary to substantiate her RFC determination.[17]

---

[15]    The undersigned does not mean to suggest that Bonner uses his pain medication sporadically as there is no indication that he does anything other than take the medication, in particular, Flexeril, as prescribed. Flexeril (Cyclobenzaprine Hcl) "is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."   http://www.rxlist.com/flexeril-drug/indications-dosage/html (last visited August 26, 2013, 10:25 a.m.)

One of the common side effects associated with Flexeril is drowsiness, *see* http://www.rxlist.com/flexeril-drug.html (last visited August 26, 2013, 10:25 p.m.) consistent with Bonner's testimony at the hearing (*see* Tr. 43 ("[I]t put me to sleep.")). In addition to the ALJ failing to consider any of the § 404.1529(c)(3) (and § 416.929(c)(3)) factors relative to plaintiff's pain complaints, she "never made a finding regarding whether the side effects of Claimant's medication might conceivably be disabling." *Preast v. Commissioner of Social Security,* 2009 WL 3028315, *18 (M.D. Fla. Sept. 16, 2009) (citations omitted). Indeed, the ALJ simply made the statement that it was "unclear" whether Bonner "reported" his medication side effects to his treating physicians (Tr. 24), but never specifically determined that such reports were not made and, therefore, the side effects were not disabling. On remand, the ALJ can address this additional issue.

[16]    Such credibility determination  should take the shape of that noted in *Leiter, supra,* 377 Fed. Appx. at 948 (daily activities), or *Witherspoon v. Astrue,* CA 12-0220-C, Doc. 21, at 7-9 (no pain medication, etc.). The need to perform such analysis is particularly apparent where, as here, the vocational expert testified that an individual limited in the manner plaintiff alleged secondary to musculoskeletal pain could perform no work in the national economy. (*See* Tr. 56-57.)

[17]    The ALJ's decision is also deficient in another respect. In her decision, the ALJ states that she was not according "controlling weight" to the RFC determination of the state agency "medical consultant" (Tr. 26); however, it is clear that the ALJ accorded that opinion some weight (perhaps even substantial weight) in finding that the assessment was "consistent with the other evidence of record[]" (*id.*). *See Oden v. Astrue,* 2012 WL 3029888, *4 (N.D. Ala. Jul. 20, 2012) ("Remand is warranted for the ALJ to more fully articulate the weight she afforded to the residual functional capacity assessment performed by Ms. Wright, the state agency's S[ingle] Decision Maker."). Based upon the ALJ's reference to this RFC assessment as having been completed by a "medical consultant," it appears she is relying upon it as a medical opinion (Continued)

Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over

---

even though Ms. Kenisha Washington is a Single Decisionmaker ("SDM") with no medical credentials. (*See* Tr. 222 (form specifically states that Washington is a SDM, not a medical consultant).) Washington is not an acceptable medical source, *see Siverio v. Commissioner of Social Security*, 461 Fed.Appx. 869, 871-872 (11th Cir. Feb. 23, 2012) (per curiam) and, therefore, her opinion is entitled to no weight, *compare id.* at 871 ("'SDM-completed forms are not opinion evidence at the appeals level.'") *with Brown v. Astrue*, 2012 WL 920973 (M.D. Fla. Mar. 19, 2012) (finding that an RFC assessment completed by an SDM with no apparent medical credentials is not an opinion of an acceptable medical source and is not entitled to any weight) and *Hall v. Astrue*, 2012 WL 2499177, *2-3 (N.D. Ala. Jun. 22, 2012) (finding ALJ erred in "affording any weight, even minimal weight," to the assessment of the SDM). In other words, it appears that the ALJ "labored under the mistaken belief," *Siverio, supra*, at 872, that the state agency RFC assessment was authored by a physician and accorded it something less than "controlling" weight—which could be significant weight. Moreover, the ALJ's reliance on this assessment is not "harmless" inasmuch as there is no evidence in the record relied upon by the ALJ, other than the SDM's RFC assessment, which "could have reasonably led the ALJ to conclude that [the plaintiff] could . . . perform [light] work." *Siverio*, 461 Fed.Appx. at 872. Thus, for this additional reason, the ALJ did not provide the necessary linkage between her RFC assessment and specific evidence in the record bearing upon the plaintiff's ability to perform, at least, the physical requirements of work. In this regard, the undersigned finds that the ALJ erred in noting in her opinion that plaintiff testified he still worked two days a weeks. (*See* Tr. 24.) Plaintiff did not so testify; instead, he stated that he worked only one or two days a month and indicated that his "employer" accommodated his impairments and limitations. (*Compare* Tr. 39 ("I washed tractors, cattle trailers, you know, just pi[ddle] around. He let me make a day he ain't there.") *with* Tr. 40 ("I work one day sometime out of the month, sometime I work two days.").)

this matter.

**DONE** and **ORDERED** this the 27th day of August, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**